UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ALLEN RAYMOND WOLVERTON; JANE DOE WOLVERTON; ESTATE OF INDALECIO GARCIA, JR.; KRYSTAL GARCIA,<br><br>Defendant. | Case No. 3:23-cv-05228-TMC<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**ORDER**

Before the Court is Plaintiff First American Property & Casualty Insurance Company's ("First American's") motion for summary judgment. Dkt. 25. First American requests declaratory relief finding it has no duty under a homeowners insurance policy it issued to Defendant Allen Raymond Wolverton to defend or indemnify Wolverton in a lawsuit arising from the death of Indalecio Garcia at Wolverton's home. *Id.* Defendant Krystal Garcia, as personal representative of the Estate of Indalecio Garcia (the "Estate"), and Wolverton (together,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

"Defendants") filed responses in opposition to the motion. Dkt. 28, 29. The Court has considered the parties' briefs, the relevant record, and applicable law. Because First American's insurance policy excludes coverage for the events resulting in Garcia's death, the Court GRANTS First American's motion. The Court also accordingly DENIES the Estate's request for a continuance and discovery in this matter.

I.   BACKGROUND

Wolverton entered a homeowners insurance contract with First American (the "policy") with coverage for the property at 3529 South L St., Tacoma, WA 98418 (the "property") with personal liability coverage up to $500,000. *See* Dkt. 9 at 3; Dkt. 26-1 at 8, 13. The policy provided coverage for the period of June 29, 2019 through June 29, 2020. Dkt. 26-1 at 39. On or about December 1, 2019, Wolverton hosted Garcia at a party on the property, *see* Dkt. 9 at 3; Dkt. 26-1 at 3, where Wolverton gave Garcia opioid pills containing fentanyl (the "pills"). Dkt. 26-1 at 3–4. Although the Court assumes for the purposes of this motion that the men did not know the pills contained fentanyl, it is undisputed they consumed alcohol and opioid pills at the property "for [the] purposes of getting high or intoxicated." *Id*. After consuming the pills, Garcia fell unconscious while standing and hit his head on the garage door of the property before falling to the ground. Dkt. 9 at 3; Dkt. 26-1 at 3–4. Tacoma Fire Department emergency services were called after Garcia turned blue after drooling and vomiting while unconscious. Dkt. 26-1 at 4. Emergency services took Garcia to Tacoma General Hospital where he was pronounced dead. Garcia's cause of death was determined to be the combined effect of alcohol and fentanyl consumption. Dkt. 9 at 3–4; Dkt. 26-1 at 4.

On November 29, 2022, the Estate filed a complaint for wrongful death against Wolverton in Washington state court. *See* Dkt. 9 at 3; Dkt. 26-1 at 1. On March 17, 2023, First American filed its complaint for declaratory relief in this case, Dkt. 1, a first amended complaint

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

on March 21, 2023, Dkt. 7, and a second amended complaint on March 23, 2023. Dkt. 9. First American requested declaratory relief from any duty to defend or indemnify Wolverton in relation to Garcia's death because the events leading to Garcia's death were not covered under Wolverton's homeowner's insurance policy with First American. Dkt. 1, 7, 9, 25. The policy covers Wolverton's personal liability for claims of "bodily injury" and "property damage," Dkt. 26-1 at 76, and an additional policy endorsement adds coverage for "personal injury." *Id*. at 97. The policy defines "bodily injury" as "bodily harm, sickness or disease" including "required care, loss of services and death." *Id*. at 58. "Personal injury" is defined as "injury arising out of" any of the following: "false arrest, detention or imprisonment;" "malicious prosecution;" wrongful eviction, entry, or invasion of the premises; slander or libel; or violations of privacy. *See id*. at 97.

The insurance policy excludes coverage for bodily injury and property damage arising from the "use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812" when not "following the orders of a licensed physician" ("controlled substances exclusion"). *Id*. at 79. The policy specifies that "[c]ontrolled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs." *Id.* The policy endorsement adding personal injury coverage deletes the controlled substances exclusion in relation to personal injury only, stating that "[w]ith respect to the coverage *provided by this endorsement*, **Section II – Exclusions** is deleted and replaced." *Id*. at 97 (emphasis added).

## II.   DISCUSSION

### A.   Jurisdiction and applicable law.

The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the opposing parties are citizens of different

states. The insurance policy at issue involves coverage up to $500,000 for personal liability, *see* Dkt. 26-1 at 13, and First American is a citizen of California while Defendants are all citizens of Washington. Dkt. 1-1 at 1; Dkt. 9 at 2. And pursuant to 28 U.S.C. § 2201, it is within the Court's discretion to grant the declaratory relief sought by First American. 28 U.S.C. § 2201 ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration."); *see Am. Nat'l Prop. & Cas. Co. v. Gardineer*, 25 F.4th 1111, 1113 (9th Cir. 2022) (affirming declaratory judgment in favor of insurer). Because the Court is sitting in diversity, the substantive claims are governed by state law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties agree that Washington state law applies to this dispute.

      **B.**    **Legal standards.**

            **1.**    **Summary judgment standard.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a fact dispute is "material" "only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The evidence relied upon by the nonmoving party must be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presume[d]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case where the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

### 2. Washington law for the duties to defend and indemnify.

Washington law applies the "eight corners rule" when analyzing an insurer's duty to defend a policyholder. *Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017), *as modified* (Aug. 16, 2017). The Court examines the "four corners" of the complaint against the insurer's policyholder and the "four corners" of the relevant insurance policy to determine if there is an issue of fact or law that gives rise to the insurer's duty to defend. *Id*. If there is "any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Id*. Relatedly, an insurer's "duty to indemnify exists only if the insurance policy actually covers the insured's liability" in contrast with the duty to defend which "arises when the policy could *conceivably* cover allegations in a complaint." *Id*.

### 3. Insurance policy interpretation is a question of law.

The interpretation of the "four corners" of an insurance policy "is a question of law, in which the policy is construed as a whole and each clause is given force and effect." *Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002). Insurance policies should be given a "fair, reasonable, and sensible construction." *Id*. Terms defined in a policy are construed as defined and undefined terms are given their "ordinary and common meaning." *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1247 (Wash. 1997). "An ambiguity exists only 'if the *language on its face* is fairly susceptible to two different but reasonable interpretations.'" *Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 312 (Wash. 1994) (quoting *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cty.*, 771 P.2d 701, 707 (Wash. 1989)).

### C. Wolverton's policy excludes coverage for bodily injury resulting from illegitimate use of controlled substances, including opioids.

First American asserts in its motion for summary judgment that Wolverton's policy excludes coverage of bodily injury resulting from the illegitimate use of controlled substances. Dkt. 25 at 5–6. Wolverton and the Estate assert in their opposition that the controlled substances exclusion was deleted by a policy endorsement. Dkt. 28, 29. The Court has based the factual summary above, and discussion below, on the "four corners" of the wrongful death complaint against Wolverton in accordance with the "eight corners rule." *See Xia*, 400 P.3d at 1240; Dkt. 26, 26-1. Accordingly, the Court finds it undisputed that Garcia ingested pills containing fentanyl and that Tacoma General Hospital determined the cause of death to be the combined effect of alcohol and fentanyl consumption. *See* Dkt. 9 at 3–4; Dkt. 25; Dkt. 26-1 at 4; Dkt. 28, 29. The wrongful death complaint *does not* allege that Garcia intentionally took *fentanyl*—but *does* allege that he intentionally took *opioid* pills. Dkt. 26-1 at 3; *see supra* at 2. The parties do not dispute that the pills were ingested for the "purposes of getting high or intoxicated." Dkt. 9 at 3; Dkt. 25; Dkt. 26-1 at 3; Dkt. 28, 29. As such, there is no material factual dispute in this case. The parties only dispute the impact of a policy endorsement on the controlled substances exclusion for bodily injury.

The Court then examines the "four corners" of Wolverton's policy with First American in relation to the wrongful death complaint, consistent with the "eight corners" rule. The plain language of that policy shows that the endorsement in dispute, titled "Personal Injury – Washington," did not delete the controlled substances exclusion from the entire policy. Dkt. 26-1 at 97. The endorsement only altered the exclusion "[w]ith respect to the coverage provided by" the personal injury endorsement. *Id*. The qualification made in the policy endorsement is unambiguous on its face: that the deletion of the controlled substances exclusion was limited to

"personal injury" and did not alter the exclusion with relation to "bodily injury." *See Kish*, 883 P.2d at 312. This means the controlled substances exclusion for bodily injury resulting from the illegitimate "use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812" remains in effect. Dkt. 26-1 at 79.

The policy defines "controlled substances" to include "all narcotic drugs." Dkt. 26-1 at 79 ("Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs."). Opioids are narcotics, a fact the parties do not dispute. *See also, e.g.*, Department of Justice, Drug Enforcement Administration, *Drug Fact Sheet – Narcotics* (April 2020) ("'[N]arcotic' refers to opium, opium derivatives, and their semi-synthetic substitutes. A more current term for these drugs, with less uncertainty regarding its meaning, is 'opioid.'"), *available at* https://www.dea.gov/sites/default/files/2020-06/Narcotics-2020.pdf (last visited November 27, 2023). While Garcia did not knowingly intend to take *fentanyl*, the wrongful death complaint against Wolverton alleges that Garcia *did intend* to take opioid pills for the "purposes of getting high or intoxicated." Dkt. 26-1 at 3. The controlled substances exclusion does not provide an exception for lack of knowledge of the specific controlled substance whose illegitimate use results in bodily injury. Dkt. 26-1 at 79. Wolverton and Garcia's use of opioids falls under the plain, unambiguous language of the controlled substances exclusion and the policy does not cover any bodily injury arising from that use.

First American's duty to indemnify Wolverton from the claims of Garcia's estate is therefore not triggered because Wolverton's policy does not provide the relevant coverage. Similarly, First American has no duty to defend Wolverton. Even the most favorable construction of the "eight corners" of the wrongful death complaint against Wolverton and his insurance policy provides no conceivable circumstance in which the policy language covers

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

Garcia's death. It is clear from the undisputed facts that Garcia's intentional and illegitimate use of a controlled substance led to his death on Wolverton's property.[1]

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS First American's motion for summary judgment and ISSUES the following declaratory judgment:

1. Wolverton's homeowner's insurance policy with First American does not provide liability coverage for Garcia's bodily injury; and

2. First American has no duty to indemnify or defend Wolverton or any defendant in the underlying litigation related to Garcia's bodily injury because there was no insurance coverage for the incident that occurred on December 1, 2019, leading to that injury.

Accordingly, the Court also DENIES the Estate's request for a continuance and discovery in this matter.

Dated this 28th day of November, 2023.

Tiffany M. Cartwright
United States District Court Judge

---

[1] Because the controlled substances exclusion is dispositive of this motion, it is not necessary for the Court to consider whether Garcia's ingestion of the pills is definable as an "accident" under the policy that may trigger liability coverage in the absence of the exclusion. *See* Dkt. 25, 28, 29.